IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ANDRE and SOPHIEA LIPFORD, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> SPECIALIZED LOAN SERVICING, LLC, ) <br> ) <br> Defendant. ) <br> ) | Civil Action No. 1:23-cv-1198 (RDA/WEF) |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss Counts 1 and 2 of the Amended Complaint. Dkt. 22.[1] This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 23) and Plaintiffs' Opposition Brief (Dkt. 33),[2] this Court DENIES the Motion for the reasons that follow.

I.   BACKGROUND

A.   Factual Background

Plaintiffs Andre and Sophiea Lipford ("Plaintiffs") purchased their home in Alexandria, Virginia in December 2006 using an 80/20 mortgage loan. Dkt. 20 ¶ 1. An 80/20 mortgage loan

---

[1] The Motion does not seek to dismiss the third count of the Amended Complaint, which alleges a violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e)(2).

[2] Defendant did not file a Reply in support of its Motion.

1

permits "underqualified borrowers to finance home purchases through two mortgages – without a down payment and without having to pay for mortgage insurance." *Id*. ¶ 20.

During the Great Recession many borrowers were required to modify their first mortgages to remain in their homes. *Id*. ¶ 21. Plaintiffs did just that and were able to save their home during the 2007/2008 mortgage crisis by modifying the first mortgage on the home through the HAMP program. *Id*. ¶ 2.[3] After Plaintiffs obtained a HAMP modification, they believed that their second mortgage was resolved as part of the modification. *Id*. ¶ 3. They based this belief, in part, on the fact that they stopped receiving monthly mortgage statements about their second mortgage after their HAMP modification. *Id*. Many borrowers who obtained a HAMP modification did have their second mortgages charged off, significantly reduced, or forgiven as part of the program. *Id*. ¶ 21. Once a mortgage is charged off or extinguished, consumers no longer receive statements. *Id*. ¶ 22.

Plaintiffs have not made any payments on their second mortgage since 2009. *Id*. ¶ 4. Plaintiffs' second mortgage was later assigned to Defendant Specialized Loan Servicing, LLC ("SLS" or "Defendant"), after Plaintiffs had already defaulted on their payments. *Id*. ¶ 5. Defendant did not immediately start sending Plaintiffs monthly mortgage statements when it acquired servicing rights to the loan. *Id*. ¶ 7.

Eventually, Defendant threatened foreclosure of Plaintiffs' home through the second mortgage and referred the mortgage for foreclosure in April 2023. *Id*. ¶¶ 8, 42. Although the original balance of the loan was $107,000, Defendant is seeking to collect approximately $260,000. *Id*. ¶ 10. Plaintiffs assert that interest charges were not permissible unless Defendant

---

[3] Again Plaintiffs fail to define the term "HAMP," but it is presumably meant to refer to the Department of Treasury's Home Affordable Modification Program.

2

was sending monthly statements. *Id.* ¶ 11. In addition to sending Plaintiffs a foreclosure notice, Defendant took additional steps towards foreclosure, including advertising the foreclosure sale. *Id.* ¶ 45.

Plaintiffs did not understand how their home had been referred to foreclosure or why the balance due was so high. *Id.* ¶ 46. They created an online account with Defendant and were able to obtain a payoff amount that included past due interest and fees. *Id.* ¶ 47. To try to get additional information regarding the second mortgage, Plaintiffs sent Defendant a Qualified Written Request ("QWR"), which contained all the necessary personal and loan information and disputed the amount of the payoff quote. *Id.* ¶¶ 48-49. The QWR was sent to Defendant at the designated QWR address. *Id.* The QWR asked Defendant to send the following notes: (i) the servicing notes for Plaintiffs' loan; (ii) the identity of the owner of the loan; (iii) any notices that were mailed to Plaintiffs since November 2009; (iv) any documents supporting the foreclosure referral; and (v) a breakdown of all fees and supporting invoices. *Id.*

On July 11, 2023, Defendant responded to the QWR. *Id.* ¶ 52. Plaintiffs assert that the response was deficient. *Id.* ¶ 53. Plaintiffs allege that Defendant acknowledged that it was not permitted to assess interest when there were no monthly statements sent, but that Defendant only removed interest from between January 2022 and May 2023. *Id.* ¶ 54. Plaintiffs allege that this response was incorrect, because Plaintiffs also did not receive monthly statements before January 2022. *Id.* ¶ 55. After Plaintiffs sent the QWR, Defendant began sending monthly statements that included demands for payment with balances that Plaintiffs contend were incorrect. *Id.* ¶¶ 58-62.

Plaintiffs allege that many consumers were in the same position as themselves: believing that their second mortgage was charged off or cancelled and no longer receiving statements when, in fact, the second mortgage still existed. *Id.* ¶¶ 23-24. Those second mortgages were then sold

off to companies, like Defendant. *Id*. ¶ 25. Plaintiffs allege that, with the recent surge in housing prices, consumers have significant equity in their homes that make charged-off second mortgages highly profitable. *Id*. ¶ 26. Plaintiffs further allege that debt collects are now seeking to collect on defaulted second mortgages and, if consumers cannot pay, foreclosing on homes. *Id*. ¶ 27.

Plaintiffs assert that, once a mortgage is charged off, the servicer is no longer required to send monthly statements, but it cannot assess any additional late fees or interest on the account. *Id*. ¶ 30. Plaintiffs further assert that a servicer may resume charging interest and fees only if it resumes sending monthly statements but may not retroactively assess fees or interest during the time that statements were not sent. *Id*. ¶ 31.

### B. Procedural Background

On September 1, 2023, Plaintiffs filed their original Class Complaint. Dkt. 1. On November 1, 2023, Defendant filed a motion to dismiss and a motion to strike the complaint. Dkt. Nos. 9; 11. On November 16, 2023, Magistrate Judge William E. Fitzpatrick granted Plaintiffs' consent motion for extension of time to file an amended complaint. Dkt. 17.

On November 29, 2023, Plaintiffs filed an Amended Complaint, which removed the class allegations and asserted three claims for relief: (i) a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e(10), based on Defendant's representations that Plaintiffs owed fees and interest for periods that they did not receive monthly statements (Count 1); (ii) a violation of the FDCPA, 15 U.S.C. § 1692f, based on Defendant's attempt to collect interest and fees and foreclose on Plaintiffs' home (Count 2); and (iii) a violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e)(2), based on Defendant's failure to make corrections to Plaintiffs' accounts and to provide information requested in the QWR (Count 3). Dkt. 20. That same day, an Order issued, denying the prior motion to dismiss and motion to strike

as moot in light of the amended complaint. Dkt. 19. On December 12, 2023, Defendant filed the instant motion to dismiss, seeking to dismiss Counts 1 and 2. Dkt. 22. On January 23, 2024, Plaintiffs filed their Opposition, which attached a copy of the foreclosure notice (Dkt. 33-1) and a monthly mortgage statement (Dkt. 33-2). Dkt. 33.[4] Defendant did not file any reply brief.

## II. STANDARD OF REVIEW

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a complaint must set forth "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When reviewing a motion brought under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). "[T]he court 'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)). Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

---

[4] The Court may consider sources outside the complaint that are, in effect, deemed to be part of the complaint, such as documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Here, Plaintiffs incorporated by reference the foreclosure notice and monthly mortgage statements into their Amended Complaint and the exhibits attached to the Opposition may therefore appropriately be considered. Defendant attaches the second mortgage as Exhibit A to its Memorandum in Support. Dkt. 23-1. The second mortgage is also incorporated by reference into the Amended Complaint and may therefore be appropriately considered.

suffice." *Iqbal*, 556 U.S. at 678. Generally, courts may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III. ANALYSIS

Defendant's Motion focuses on the FDCPA Counts (Counts 1 and 2). Dkt. 22. The parties agree that, to state a claim for relief under the FDCPA, Plaintiffs must sufficiently allege that "(1) the defendant constitutes a debt collector as defined by the FDCPA; (2) the plaintiff was the object of collection activity arising from a consumer debt as defined by the FDCPA; and, (3) the defendant engaged in an act or omission prohibited by the FDCPA." *Hill v. Nationstar Mortg. LLC*, 2022 WL 16950025, at *3 (E.D. Va. Nov. 15, 2022); *see also Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 859 (E.D. Va. 2016). Defendant argues that Plaintiffs cannot state a claim in either Count because "they cannot plead that SLS attempted to collect a debt from Plaintiffs or otherwise attempted to foreclose on Plaintiffs' property without a present right to possession thereof." Dkt. 23 at 6-7. Thus, the Court will focus on whether Plaintiffs were the object of collection activity.

#### A. Count 1 – False Representation

As alleged in Count 1, Section 1692e of the FDCPA prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e(10). Defendant argues that the foreclosure notice and monthly statements do not qualify as efforts to collect the debt.

The Fourth Circuit has explained that "nothing in [the] language [of the FDCPA] *requires* that debt collection's misrepresentation [or other violative actions] be made as part of an express demand for payment or event as part of an action designed to induce the debtor to pay." *Powell v.*

6

*Palisades Acquisition XVI, LLC*, 782 F.3d 119, 123 (4th Cir. 2014).  In *Powell*, the Fourth Circuit held that an "assignment of judgment" constituted a debt collection activity that triggered the protections of the FDCPA.  *Id*. at 120-21.  In *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373 (4th Cir. 2006), the Fourth Circuit held that a law firm could be a debt collector, as defined by the FDCPA, where it sent a notice that it was preparing foreclosure papers and thereafter initiated foreclosure proceedings.  443 F.3d at 374-76.  And in *McCray v. Federal Home Loan Mortgage Corp.*, 839 F.3d 354 (4th Cir. 2016), the Fourth Circuit held that a law firm was a debt collector where it sent a foreclosure notice that included specific loan information, such as the name of the lend, the date of default, and the total amount owed.  839 F.3d at 360.  The Fourth Circuit further noted that the "actions in pursuing foreclosure constituted a step in collecting debt and thus debt collection activity that is regulated by the FDCPA."  *Id*. at 361.

  Defendant does not address any of the above-cited Fourth Circuit authorities.  Instead, Defendant relies on two district court cases that pre-date the Fourth Circuit's decision in *McCray*.  *See* Dkt. 23 at 11 (citing *Davis v. Wells Fargo Bank N.A.*, 2014 WL 106257, at *5 (E.D. Va. Jan. 8, 2014; *Blagogee v. Equity Trustees LLC*, 2010 WL 2933963, at *6 (E.D. Va. July 26, 2010)).  Here, the Court sees no meaningful distinction between the foreclosure notice at issue here and the foreclosure notice at issue in *McCray*; both notices notified the borrower of an impending foreclosure, identified the loan at issue, and identified an amount alleged to be owed.  *Comp.* Dkt. 20 ¶ 43 ("This foreclosure notice, which SLS directed that its agent send to the Lipfords stated that the Lipfords owed $259,836.82 on their second mortgage."); Dkt. 33-1 (Foreclosure Notice) *with McCray*, 839 F.3d at 360-61 (noting that the notice "included specific loan information" such as the date of default and the total amount due).  Accordingly, the Court finds that Plaintiffs have

plausibly alleged that Defendant was engaged in collection activity when it had its agent issue the foreclosure notice.

The monthly mortgage statements, of which Plaintiffs have attached the August 2023 statement as an example, also qualify as collection activity under the same Fourth Circuit authority. The August 2023 statement: (i) identifies the "total amount due"; (ii) provides a "payment due date"; (iii) provides a "delinquency notice"; (iv) provides a "monthly payment notice" to be returned to Defendant; (v) advises Plaintiffs to "make checks payable to" Defendant; and (vi) advises that this is a "communication from a debt collector." Dkt. 33-2.

Seeking to avoid this conclusion, Defendant relies primarily on the Fourth Circuit's unpublished opinion in *Lovegrove v. Ocwen Loans Servicing, LLC*, 666 F. App'x 308 (4th Cir. 2016). Defendant, however, misreads *Lovegrove*. In *Lovegrove*, the Fourth Circuit found that a monthly statement was for informational purposes only because the subject loan had been discharged in bankruptcy and the monthly mortgage statement included a disclaimer that, "if . . . the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only." *Id*. at 312. The Fourth Circuit therefore held that the monthly statements were clear that "they were not in connection with the collection of a debt *under Lovegrove's circumstances*." *Id*. (emphasis added). Importantly, the Fourth Circuit noted that "monthly statements generally request payments," but due to the disclaimer it was clear that, for customers in bankruptcy, the statement was only for informational purposes. *Id*. n. 5. Of note, the August 2023 statement at issue here contains a similar bankruptcy disclaimer: "IF YOU ARE A CUSTOMER IN BANKRUPTCY . . . THIS NOTICE CONSTITUTES NEITHER A DEMAND FOR PAYMENT NOR A NOTICE OF PERSONAL LIABILITY." Dkt. 33-2. The inclusion of

this language again implies that, if you are *not* a customer in bankruptcy (as Plaintiffs in the instant case were not), then the monthly statement *is* a demand for payment.

Accordingly, Plaintiff has plausibly alleged that the foreclosure notice and monthly statements constituted collection activity and the Motion will be denied with respect to Count 1.

### B. Count 2 – Collection and Foreclosure

Defendant's first argument with respect to Count 2 reiterates that Plaintiffs have failed to allege that the foreclosure notice or monthly mortgage statements were attempts to collect on the debt. Dkt. 23 at 12. This argument fails for the same reasons set forth above with respect to Count 1.

Defendant also challenges Count 2, to the extent that Plaintiffs assert that Defendant violated Section 1692(f)(6) by attempting to foreclose on the property. Dkt. 23 at 12. Plaintiffs allege that Defendant violated this provision because Defendant never sent Plaintiffs a pre-acceleration foreclosure notice that either complied with Va. Code § 55.1-321 or the terms of the Second Mortgage, and, therefore, did not have a present right to possession of the Property. Dkt. 20 ¶¶ 76-77. Defendant argues that Plaintiffs cannot succeed on Count 2 to the extent that it is based on the attempt to foreclose because Plaintiffs cannot allege that the scheduled foreclosure took place. Dkt. 23 at 13.

To begin with, district judges in this District have recognized that a plaintiff may premise a FDCPA claim on a defendant's alleged failure to comply with Virginia Code § 55.1-321, which includes certain notice requirements for a foreclosure. *Hill v. Nationstar Mortgage, LLC*, 2022 WL 16950025, at *5 (E.D. Va. Nov. 15, 2022). Thus, in *Hill*, U.S. District Judge David J. Novak held that a plaintiff may premise an allegation that a defendant lacked a "present right to

9

possession" under the FDCPA on a defendant's alleged failure to comply with Virginia law. *Id*. That is precisely what Plaintiffs have done here.

District judges within this District have also rejected the argument Defendant makes here that it was entitled to institute foreclosure proceedings pursuant to the Deed of Trust even if the notice misstated the amount owed. *See Simon v. Specialized Loan Servicing, LLC*, No. 23-v-1159, Dkt. 42 (E.D. Va. Jan. 4, 2024) (Giles, J.) (denying the defendant's motion to dismiss); *Wegner v. Mfc.'s & Traders Tr. Co.*, 2015 WL 9200478, at *2 (E.D. Va. Dec. 16, 2015) (where an acceleration notice misstated "the arrearage by such a wide measure[,]" the plaintiff had sufficiently alleged a breach); *Harris v. United States*, 2014 WL 5324941, at *4 (E.D. Va. Oct. 17, 2014) (where the notice "exaggerated the amount of arrearages[,]" there was a breach of the Deed of Trust). Accordingly, the Motion will also be denied with respect to Count 2.

## IV. CONCLUSION

Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss (Dkt. 22) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
August 12, 2024

/s/
Rossie D. Alston, Jr.
United States District Judge